# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Orwa A. and
Farok H.,

       Petitioners,

v.

Matthew G. Whitaker,[1] Lee Francis Cissna,
Leslie Tritten, and Kirstjen Nielsen,

       Respondents.

File No. 18-cv-02043 (ECT/KMM)

**MEMORANDUM OPINION
AND ORDER**

---

Herbert A. Igbanugo and Jason A. Nielson, Igbanugo Partners Int'l Law Firm, PLLC, Minneapolis, MN, for petitioners Orwa A. and Farok H.

Joseph H. Hunt, William C. Peachey, Timothy M. Belsan, and Sergio Sarkany, U.S. Department of Justice – Civil Division, Washington, DC, for respondents Matthew G. Whitaker, Lee Francis Cissna, Leslie Tritten, and Kirstjen Nielsen.

---

Petitioners seek de novo review of United States Customs and Immigration Services ("USCIS") decisions rejecting Petitioners' requests to adjust their status as lawful permanent residents retroactively to August 2002 and denying their applications for naturalization.[2]  This is the fourth federal case Petitioners have filed challenging agency

---

[1]    Acting Attorney General Matthew G. Whitaker is substituted for former Attorney General Jefferson Sessions, III, because a "[public] officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

[2]    Petitioners commenced this action under 8 U.S.C. § 1421(c).  *See* Pet. [ECF No. 1] ¶ 205.  It provides:

action related to their naturalization efforts. The first case was decided on the merits against Petitioners. The second was dismissed for failure to exhaust administrative remedies. Petitioners dismissed their third case voluntarily.

Here, in lieu of filing an answer, Respondents filed a motion to dismiss the case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 10. In a nutshell, Respondents argue that the Court lacks subject-matter jurisdiction to review USCIS's decisions rejecting Petitioners' applications for retroactive adjustment to lawful permanent residency and that a final judgment rendered on the merits in Petitioners' first federal case precludes review of their applications for naturalization in this case. Alternatively, to the extent the Court has subject-matter jurisdiction, Respondents argue that Petitioners cannot invoke equitable legal doctrines in this case to bypass the statutory prerequisites for naturalization found unmet in Petitioners' first suit. The Court will grant Respondents' motion.

I

A

The factual background, administrative procedures, and federal judicial proceedings leading to this lawsuit date back roughly twenty years and are not easy to follow. It helps

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5 [the Administrative Procedure Act]. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

to start with a few basics. Farok H. ("F.H.") and Orwa A. ("O.A.") are husband and wife. Pet. [ECF No. 1] ¶ 79. They have been married since 1986 and have six children, including one born in Minnesota. *Id.*; Mem. in Opp'n [ECF No. 16] at 4. F.H. and O.A. reside in Blaine, Minnesota, Pet. ¶¶ 54, 81, thus making the District of Minnesota the appropriate judicial district in which to bring this action, 8 U.S.C. § 1421(c). F.H. is an accomplished and respected Sheikh. Pet. ¶ 54. F.H. and O.A. are natives and citizens of Iraq, *id.* ¶¶ 53, 79, and they wish to become United States citizens. According to the petition, "[O.A.]'s immigration status in the U.S. has been entirely linked to and dependent on [F.H.]'s immigration status," *id.* ¶ 80. Because O.A.'s status derives entirely from F.H.'s, the Court's description of the background facts and administrative and judicial proceedings often focuses on F.H.

Insofar as it matters to this lawsuit, F.H.'s immigration path began in August 1998. That month, Al-Amal School in Fridley, Minnesota, filed an I-129 petition with the Immigration and Naturalization Service ("INS," the predecessor of USCIS) on F.H.'s behalf. *Al-Saadoon v. Holder*, No. 12-cv-2949 (PAM/TNL), 2014 WL 5362890, at *1 (D. Minn. Oct. 21, 2014) ("*Al-Saadoon I*"), *aff'd sub nom. Al-Saadoon v. Lynch*, 816 F.3d 1012 (8th Cir. 2016). Al-Amal School sought to have F.H. provide it with religious-worker services on a temporary basis. *Id.* INS granted the petition and approved a nonimmigrant visa for F.H. that was valid from September 14, 1998, to September 5, 2001. *Id.* F.H. entered the United States as a nonimmigrant religious worker in June 1999. *Id.*; Pet. ¶¶ 53, 80.

F.H.'s classification changed in December 2000. That month, in response to a petition filed by the Islamic Cultural Community Center ("ICCC") in Minneapolis, the INS approved an immigrant visa for F.H. *Al-Saadoon I*, 2014 WL 5362890 at *1–2. The ICCC wanted F.H. to serve as its Imam on a permanent basis. *Id.* at *1. This change in classification was significant. It meant F.H. and, derivatively, O.A. wished to live permanently in the United States.[3] In June 2001, F.H. took another step towards permanency by applying to adjust his status to that of a lawful permanent resident, a prerequisite to pursuing naturalization. *Id.* at *2, *4. The INS approved that application on August 21, 2002. *Id.* at *2; Pet. ¶¶ 55, 82. (The INS had reason to deny the application, but more on that in the next section.)

B

F.H.'s next step in his immigration process would become the subject of Petitioners' first federal-court case. In July 2007, F.H. applied for naturalization by submitting a form N-400. *Al-Saadoon I*, 2014 WL 5362890 at *2; Pet. ¶¶ 56, 83. After a review and administrative appeal process, USCIS denied F.H.'s naturalization application in a decision dated August 16, 2012. *Al-Saadoon I*, 2014 WL 5362890 at *3; Pet. ¶¶ 64, 91. USCIS gave two reasons for its final decision. First, it determined that although the INS had

---

[3] A nonimmigrant visa is issued to a person with permanent residence outside the United States, but who wishes to be in the United States on a temporary basis for any number of reasons (*e.g.*, tourism, work, medical treatment, etc.). An immigrant visa is issued to a person wishing to live permanently in the United States. U.S. CUSTOMS & BORDER PROT., *What is the difference between an Immigrant Visa vs. Nonimmigrant Visa?*, https://help.cbp.gov/app/answers/detail/a_id/72/~/what-is-the-difference-between-an-immigrant-visa-vs.-nonimmigrant-visa-%3F (last updated July 10, 2018).

approved his application for lawful permanent residency, F.H. had not been *lawfully* admitted to permanent residency—a prerequisite to naturalization—because he, unbeknownst to the INS at the time of the status adjustment, had engaged in unauthorized employment while in the United States on his nonimmigrant visa. *See Al-Saadoon I*, 2014 WL 5362890 at *2–3, *5. USCIS determined that F.H. had worked for the ICCC when his nonimmigrant visa permitted F.H. to work only for Al-Amal School. *See id.* at *2–3. Therefore, notwithstanding INS's prior approval, USCIS concluded that F.H.'s admission to permanent residency was not, in fact, "lawful" due to his unauthorized employment. *Id.* at *3, *6. Second, and not at issue in this case, USCIS determined that F.H. "lacked good moral character." Pet. ¶¶ 64, 91; *Al-Saadoon I*, 2014 WL 5362890 at *3.

On November 26, 2012, Petitioners filed suit in the United States District Court for the District of Minnesota (*Al-Saadoon I*). Pet. ¶¶ 65, 92. In that case, just as in this case, Petitioners sought de novo review of USCIS's decisions denying their naturalization applications under 8 U.S.C. § 1421(c). *Id.* Following a bench trial, District Judge Paul A. Magnuson issued detailed findings of fact and conclusions of law affirming USCIS's denials. Among other things, Judge Magnuson concluded:

> In sum, if a nonimmigrant religious worker provides paid or volunteer services for a different religious organization than that authorized to engage his or her services and the different religious organization does not file a new petition and obtain authorization, those services constitute unauthorized employment and bar the applicant from being admitted to permanent residence status. If the applicant was admitted, the admission was unlawful and renders the applicant ineligible for naturalization.

*Al-Saadoon I*, 2014 WL 5362890 at \*6.  Judge Magnuson found that the record before him "plainly reflect[ed]" that F.H. had engaged in employment for the ICCC while in the United States on a nonimmigrant visa that authorized employment only with Al-Amal School.  *Id.* As a result, Judge Magnuson ordered that "[n]either [F.H.] nor [O.A.] are eligible to naturalize because they were not lawfully admitted to permanent residence status."  *Id.* at \*7.  Because Judge Magnuson affirmed USCIS's denial of Petitioners' naturalization applications on this basis, he did not address USCIS's second ground for denying the applications—that F.H. lacked good moral character.  *Id.*

Petitioners appealed Judge Magnuson's judgment to the Eighth Circuit.  It affirmed, finding that "the record clearly supports" the primary basis for Judge Magnuson's decision. *Al-Saadoon v. Lynch*, 816 F.3d 1012, 1015 n.2 (8th Cir. 2016).   The Eighth Circuit explained:

> [F.H.] does not dispute that the ICCC was not authorized to employ him until at least August 2, 2000, when the ICCC filed an I-360 Petition for Special Immigrant Religious Worker on [F.H.]'s behalf.  He simply asserts that he was not employed before that time.
>
> The district court found that he began his employment with the ICCC before he was authorized to do so, "starting at least in early to mid-2000."  Three of [F.H.]'s own statements are central to the court's finding.  First, [F.H.] stated on his 2007 naturalization application that he was employed by the ICCC from "7-15-2000" to the "present."  He signed and certified that application under penalty of perjury.  Second, in a sworn interview, [F.H.] said that he began working at the Al-Amal School in 1999 and was employed by them for "less than a year" before he started working for the ICCC; a letter from the school confirmed that he started working at the school in June 1999, more than one year before the ICCC filed the petition.  Third, in his sworn, pretrial deposition, he testified that he was working at the ICCC as an Imam in April 2000.  [F.H.] points to nothing in the record, other than his bald assertion that he was previously mistaken, to undermine the district court's reliance on his

certified naturalization application, his sworn statements, and the
corroborating letters.

*Id.* at 1015. Following the Eighth Circuit's decision, Petitioners sought rehearing *en banc*

and by the panel. The Eighth Circuit denied both requests in an order dated May 31, 2016,

and that is where Petitioners' first case ended. *Al-Saadoon v. Lynch*, No. 14-3807, 2016

U.S. App. LEXIS 9895, at *1 (8th Cir. May 31, 2016).

## C

Petitioners' second and third suits—and this suit—have their origins in a set of

petitions and applications filed with USCIS in November 2014 and March 2015 (after

Judge Magnuson entered judgment against Petitioners in *Al-Saadoon I*, and during the

pendency of their Eighth Circuit appeal). Pet. ¶¶ 69–70, 96–97. Petitioners sought via

those USCIS filings a retroactive cure for the unlawfulness of their 2002 admission to

permanent residency found in *Al-Saadoon I* and, if that retroactive cure were approved,

then a new path to naturalization. Describing what Petitioners did, and why they did it,

takes some explaining. Petitioners proceeded in essentially two steps.

Step 1: Change the basis of Petitioners' lawful permanent residency. Recall that

one of Petitioners' children was born in, and is a citizen of, the United States. In November

2014, that child filed a form I-130 for each Petitioner. Pet. ¶¶ 69, 96. A form I-130

establishes the existence of a qualifying family relationship between a citizen and an

individual seeking lawful permanent residency. *See* U.S. CITIZENSHIP & IMMIGRATION

SERVS., *Instructions for Form I-130, Petition for Alien Relative*, OMB No. 1615-0012

(2017). Petitioners concurrently filed forms I-485 seeking lawful permanent residency on

the basis of their child's citizenship. Pet. ¶¶ 69, 96. To clarify, these documents sought to establish a different basis for lawful permanent residency than Petitioners sought originally in 2001. Back then, Petitioners sought lawful permanent residency on the basis of F.H.'s immigrant visa issued in connection with F.H.'s ICCC employment. *Al-Saadoon I*, 2014 WL 5362890, at *1–2.[4] One might reasonably infer from these filings that Petitioners were reapplying for lawful permanent residency so that, if approved, they might mitigate any risk they believed the holding of *Al-Saadoon I* posed to their status as lawful permanent residents, and perhaps so that a new clock would start running and they might apply for naturalization at some future date. Instead, Petitioners pursued a more immediate plan.

Step 2: Request that USCIS deem Petitioners to have been lawful permanent residents based on their child's citizenship beginning in August 2002 and reapply for naturalization immediately. Petitioners took this step in March 2015. Each of them filed with USCIS a form I-485 Supplement A. Pet. ¶¶ 70, 97. In those forms, Petitioners requested that their adjustment to lawful permanent residency based on their daughter's citizenship be considered effective, or "*nunc pro tunc*" in Petitioners' words, August 21, 2002. *See id.* ¶ 144. In Petitioners' view, tying their lawful permanent residency to their U.S. citizen daughter retroactively to August 2002 would moot the unlawfulness of their admission to permanent residency found as part of the final judgment in *Al-Saadoon I* and

---

[4]     Petitioners' filings changed the statutory basis for their request to adjust to lawful permanent residency. Originally, Petitioners sought lawful permanent residency based on F.H.'s ICCC employment pursuant to 8 U.S.C. § 1255(a). Petitioners' request for retroactive lawful permanent residency tied to their daughter's United States citizenship was based on 8 U.S.C. § 1255(i). *See* Pet. ¶ 152; Mem. in Supp. [ECF No. 11] at 17–18.

give them the ability to apply for and obtain naturalization immediately. To that end, Petitioners also filed new form N-400 naturalization applications.[5] *Id.* ¶¶ 70, 97.

In May 2016, evidently dissatisfied with the pace at which USCIS was processing their November 2014 and March 2015 forms and applications, Petitioners filed their second suit in the District of Minnesota, *Hamod v. Duke*, No. 16-cv-1191 (JRT/TNL), 2017 WL 3668762 (D. Minn. Aug. 24, 2017) ("*Al-Saadoon II*"). The suit did not result in a judgment on the merits, however. *See id.* at *3. In September 2016, USCIS issued its initial decision denying Petitioners' March 2015 naturalization applications on the ground that Petitioners had been unlawfully admitted to permanent residency. *Id.* at *1. As part of its initial decision, USCIS also rejected Petitioners' request to adjust their status retroactively, concluding that an equitable doctrine enabling *nunc pro tunc* filing could not be relied upon to cure Petitioners' unlawful adjustment. *Id.*

Petitioners sought to challenge USCIS's initial denial in *Al-Saadoon II*, but Chief District Judge John R. Tunheim, adopting a Report and Recommendation of Magistrate Judge Tony N. Leung, ordered the suit dismissed without prejudice. *Id.* at *3. Chief Judge Tunheim determined that the court lacked subject-matter jurisdiction over the suit because Petitioners had failed to exhaust administrative remedies. *Id.* at *2. Specifically, Petitioners had not sought "a hearing before an immigration officer," a prerequisite to filing suit under 8 U.S.C. § 1421(c). *Id.* Of note, Petitioners argued that the denial of their request for retroactive (or *nunc pro tunc*) relief was separate from the denial of their

---

[5] It is not obvious why Petitioners filed some of their documents in November 2014 and others in March 2015 and not all at once, but this does not seem to matter.

naturalization applications and was ripe for review. *Id.* Chief Judge Tunheim rejected that

argument, explaining:

> The Court does not find a separately reviewable issue as to Plaintiffs' request
> to cure their unlawful admission over which the Court could have subject
> matter jurisdiction at this time. Supplement A to Form I-485, which
> Plaintiffs rely on, is meant to supplement Form I-485 applications to adjust
> status, and thus it does not appear that Supplement A is a stand-alone
> application for particular relief. Based on the current record, it appears that
> Plaintiffs were asking USCIS to supplement their prior applications for
> adjustment of status *nunc pro tunc* to cure Plaintiffs' unlawful admissions in
> order to grant their naturalization applications. Accordingly, USCIS's denial
> of Plaintiffs' *nunc pro tunc* request formed part of the denial of Plaintiffs'
> naturalization applications. Thus, USCIS's decision—that USCIS cannot
> cure Plaintiffs' unlawful adjustment via the *nunc pro tunc* request and
> therefore are not eligible for naturalization—will be reviewed in Plaintiffs'
> appeal of the denial of their naturalization applications.

*Id.*

Petitioners returned to USCIS for a hearing before an immigration officer. The

hearing occurred May 9, 2017, and the immigration officer who conducted the hearing

issued a final decision on March 21, 2018. Pet. ¶¶ 16, 101 and Ex. 3 [ECF No. 1-3] at 1–2,

4–5.[6] The final decision rejected Petitioners' request for adjustment to lawful permanent

residency *nunc pro tunc* August 2002 on the grounds that "INA [Immigration and

Nationality Act] § 245(i) [codified at 8 U.S.C. § 1255(i)] does not authorize USCIS to grant

nunc pro tunc relief to a person unlawfully adjusted to permanent resident status" and, even

if it did, "USCIS would deny [the] request in the exercise of discretion" based on the

---

[6] On January 29, 2018, after the hearing and before the final decision, Petitioners filed
their third suit, *Hamod v. Nielsen*. *See* Pet., Ex. 4 [ECF No. 1-4]. Based on a notice of
voluntary dismissal filed by Petitioners, District Judge Susan Richard Nelson entered an
order dismissing the suit on March 29, 2018. *Id.*

hearing officer's conclusion that F.H. had given false information to the court in *Al-Saadoon I* and based on F.H.'s failure to disclose his unauthorized ICCC employment in 2001. Pet., Ex. 3 at 5. The final decision also affirmed the initial decision to deny Petitioners' naturalization applications, describing *Al Saadoon I* as "res judicata with respect to [Petitioners'] eligibility for naturalization." *Id.* Petitioners commenced this action on July 18, 2018, seeking to challenge both the denial of their requests to adjust to lawful permanent residency retroactive to August 2002 and the denial of their naturalization applications. *See* Pet.

## II

First things first, and subject-matter jurisdiction should almost always be the first thing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). Respondents concede that 8 U.S.C. § 1421(c) empowers the Court to review USCIS's denial of Petitioners' naturalization applications (their N-400s). Mem. in Supp. [ECF No. 11] at 18. But, Respondents argue, the Court lacks subject-matter jurisdiction to review USCIS's final decision rejecting Petitioners' request for adjustment to lawful permanent residency *nunc pro tunc* August 2002. *Id.* Respondents say the denial of Petitioners' request for *nunc pro tunc* adjustment (their I-485 Supplement A's) is separate from the denial of Petitioners' naturalization applications and, therefore, outside the ambit of § 1421(c). *Id.* To the extent Petitioners seek review of this decision under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, Respondents argue the decision is unreviewable as "committed to agency discretion" by law. *Id.* at 18–20; *see* 5 U.S.C. § 701(a)(2). Respondents' challenge to subject-matter jurisdiction accepts the truth of Petitioners'

material factual allegations, making this a "facial challenge" in which "the court restricts itself to the face of the pleadings, . . . and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

A

Section 1421(c) authorizes judicial review of the denial of an "application for naturalization." 8 U.S.C. § 1421(c). It does not authorize judicial review of Petitioners' request for retroactive adjustment to lawful permanent residency. The law makes clear that lawful permanent residency and naturalization are distinct classifications, and that USCIS's denial of Petitioners' request for retroactive adjustment to the former is not a part of USCIS's decision denying Petitioners' application for the latter. One cannot be both a lawful permanent resident (a non-citizen lawfully authorized to live permanently in the United States) and a naturalized citizen at the same time. You're either one or the other. Lawful permanent residency is a prerequisite to, not a guarantee of, naturalization. *See* 8 U.S.C. § 1427(a). The application processes and requirements are different for each. The process and requirements for an alien to adjust to lawful permanent resident status are delineated in 8 U.S.C. § 1255; 8 C.F.R. § 245.1–.25; and in instructions accompanying Form I-485, U.S. CITIZENSHIP & IMMIGRATION SERVS., *Instructions for Application to Register Permanent Residence or Adjust Status*, OMB No. 1615-0023 (2017). The process by which a lawful permanent resident may apply for naturalization and the prerequisites to naturalization are very different. *See* 8 U.S.C. §§ 1421–1459; 8 C.F.R. Ch. I, Subch. C;

U.S. CITIZENSHIP & IMMIGRATION SERVS., *Instructions for Application for Naturalization*, OMB No. 1615-0052 (2016) (accompanying Form N-400).

Consistent with the law, Petitioners' March 2015 filings separately address lawful permanent residency and naturalization. Petitioners requested retroactivity specifically in connection with their applications for lawful permanent residency under 8 U.S.C. § 1255(i), and not in their naturalization applications. *See* Pet. ¶¶ 144, 203. Petitioners made that request in a form I-485 Supplement A, and USCIS instructs applicants on its website to use the I-485 Supplement A "to provide USCIS with additional information if you are seeking to adjust status under section 245(i) of the Immigration and Nationality Act [codified at 8 U.S.C. § 1255(i)]." U.S. CITIZENSHIP AND IMMIGRATION SERVS., *I-485 Supplement A, Supplement A to Form I-485, Adjustment of Status Under Section 245(i)*, https://www.uscis.gov/i-485supa (last updated Apr. 11, 2018). Petitioners applied for naturalization separately.

Faithful to the law and Petitioners' filings, USCIS's final decision regarding F.H. (which is dispositive also with respect to O.A.) analyzed each question separately. The decision first justified denial of F.H.'s "request for nunc pro tunc filing of an I-485 Supplement A . . . to attempt to cure [his] unlawful adjustment to permanent resident" by explaining that "INA § 245(i) [codified at 8 U.S.C. §1255(i)] does not authorize USCIS to grant nunc pro tunc relief to a person unlawfully adjusted to permanent resident status." Pet., Ex. 3 at 5. The decision made clear that, even if *nunc pro tunc* adjustment were available under the statute, "USCIS would deny [the] request in the exercise of discretion" based on its determinations that F.H. had made false statements in *Al-Saadoon I* and had

failed to disclose his ICCC employment in his June 2001 application for lawful permanent residency. *Id.* The decision then "reaffirms" USCIS's denial of F.H.'s application for naturalization because it determined the Eighth Circuit's decision in *Al-Saadoon I* is "res judicata with respect to [his] eligibility for naturalization." *Id.*

Given the fundamental differences between lawful permanent residency and naturalization, it is difficult to envision how § 1421(c)—which permits review of only naturalization applications—could ever permit review of a decision regarding lawful permanent residency, even one tied to a strategy for ultimately obtaining naturalization. In any event, Petitioners' requests here were separate. Their request for retroactive adjustment was a prerequisite to obtaining naturalization, but it was not a part of their naturalization applications. Nor did USCIS treat Petitioners' request for retroactive adjustment as a part of Petitioners' naturalization applications. Review of USCIS's decision to deny retroactive adjustment is not available here under 8 U.S.C. § 1421(c).[7]

---

[7] In *Al-Saadoon II*, the court wrote that, because "USCIS's denial of Plaintiffs' *nunc pro tunc* request formed part of the denial of Plaintiffs' naturalization applications," USCIS's denial of Petitioners' request for retroactive adjustment "will be reviewed in Plaintiffs' appeal of the denial of their naturalization applications." *Al-Saadoon II*, 2017 WL 3668762 at *2. Petitioners suggest that these statements from *Al-Saadoon II* require that in this case their request for retroactive adjustment be treated as part of their naturalization applications and that both denials be reviewed under 8 U.S.C. § 1421(c). *See* Pet. ¶ 202. *Al-Saadoon II* should not be understood to require review of Petitioners' request for retroactive adjustment under § 1421(c). The issues in this case were not before the court in *Al-Saadoon II*. That case addressed the narrower question of exhaustion of administrative remedies, and the close look necessitated by this case shows that Petitioners' requests for retroactive adjustment to lawful permanent residency (their I-485 Supplement A's) and their naturalizations applications (the N-400s) address separate questions.

Though the "jurisdiction" section of their petition cites the APA, Petitioners seem to rely only upon § 1421(c) to seek review of USCIS's decisions in this case. Pet. ¶¶ 110, 199–205, and at 42, ¶ 2 (following "Prayer for Relief"). The petition describes no separate or discernable claim for review of USCIS's decisions under the APA. Regardless, accounting for the possibility that Petitioners mean to seek review under the APA of USCIS's decision to deny their request for retroactive adjustment, Respondents argue that the Court lacks subject-matter jurisdiction because that decision is "committed to agency discretion by law." Mem. in Supp. at 19 (citations omitted). The APA's "provisions for judicial review do not apply when (1) a statute precludes judicial review, or (2) agency action is committed to agency discretion by law." *Tamenut v. Mukasey*, 521 F.3d 1000, 1003 (8th Cir. 2008) (en banc) (citing 5 U.S.C. § 701(a)).

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), says that "no court shall have jurisdiction to review [ ] any judgment regarding the granting of relief under section . . . 1255 of this title." 8 U.S.C. § 1252(a)(2)(B)(i); *see Sugule v. Frazier*, 639 F.3d 406, 410–11 (8th Cir. 2011). Here, Petitioners sought retroactive adjustment to lawful permanent residency under 8 U.S.C. § 1255, specifically § 1255(i). Pet. ¶ 148 (citing § 1255(i) as the basis for Petitioners' "relief applications"), ¶ 194 ("Several years of federal court litigation has with surgical precision trimmed this matter down to its bare bones essence of whether Plaintiffs were unlawfully denied relief under 8 U.S.C. § 1255(i), and the record of proceedings keenly counsels in favor of finding for the Plaintiffs in this regard.") (emphases omitted);

Mem. in Supp. at 19–20 (citing § 1255(i) as "the provision under which Plaintiffs seek retroactive adjustment"). Therefore, if USCIS's denial of Petitioners' request for retroactive adjustment is a "judgment regarding the granting of relief under section . . . 1255," then 8 U.S.C. § 1252(a)(2)(B)(i) precludes judicial review.

Applying the text of this statute to USCIS's decision answers the question plainly and affirmatively. A "judgment" is the "act or process of judging; the formation of an opinion after consideration or deliberation." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 947 (4th ed. 2009). USCIS's decision checks that box. USCIS formed an opinion—that it should deny Petitioners' request for retroactive adjustment—and the process it followed to reach that opinion, and its explanation for that opinion, reflect consideration and deliberation. USCIS's judgment was just as clearly "regarding the granting of relief under" § 1255. 8 U.S.C. § 1252(a)(2)(B)(i). The fact is—and Petitioners and Respondents agree—that Petitioners requested relief in the form of retroactive adjustment to lawful permanent residency under § 1255(i). Pet. ¶ 148; Mem. in Supp. at 19–20. It does not matter that USCIS denied only a request that Petitioners' adjustment have retroactive effect. By extending § 1252(a)(2)(B)(i)'s coverage to judgments "regarding the granting of relief" under § 1255, Congress sought to preclude judicial review of more than just judgments actually granting or denying applications for lawful permanent residency. Judgments "regarding the granting of relief" describes a broader class than judgments merely "granting [or denying] relief."

At first glance, some cases might be understood to say that § 1252(a)(2)(B)(i) does not deprive district courts of jurisdiction to review constitutional claims or questions of

law.  The Eighth Circuit has described § 1252(a)(2)(B)(i) as stripping the federal courts of "jurisdiction to review discretionary denials of adjustment of status *unless the petition for review raises a constitutional claim or question of law*."  *Mutie-Timothy v. Lynch*, 811 F.3d 1044, 1048 (8th Cir. 2016) (emphasis added) (citation and internal quotation marks omitted).  In another case, the Eighth Circuit explained that a "predicate legal question that amounts to a nondiscretionary determination underlying the denial of relief" remains reviewable. *Rajasekaran v. Hazuda*, 815 F.3d 1095, 1099 (8th Cir. 2016) (citation and internal quotation marks omitted).  However, as authority for the proposition that the Court of Appeals retains jurisdiction to review constitutional claims or questions of law, the Eighth Circuit more recently has cited 8 U.S.C. § 1252(a)(2)(D).  *See*, *e.g.*, *Burka v. Sessions,* 900 F.3d 575, 576 (8th Cir. 2018); *Dominguez-Herrera v. Sessions*, 850 F.3d 411, 414–15 (8th Cir. 2017); *Hamilton v. Holder*, 680 F.3d 1024, 1026-27 (8th Cir. 2012).  Section 1252(a)(2)(D) provides:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(B)(i).  Because § 1252(a)(2)(D) applies only to petitions for review filed with "an appropriate court of appeals," it does not save "constitutional claims or questions of law" for district court review.  *Id.*; *see also Bah v. Cangemi*, 489 F. Supp. 2d 905, 913 (D. Minn. 2007) ("The exception—found in § 1252(a)(2)(D)— cannot help [Petitioner] here because, as discussed below, the exception applies only to the courts of appeals, not to the district courts."); *Djodeir v. Mayorkas*, 657 F. Supp. 2d 22,

23–24 (D.D.C. 2009) (holding that "plain text and structure of Section 1252(a)(2)" stripped court of jurisdiction to review challenge to adjustment of immigration status and that § 1252(a)(2)(D) permitted review of legal determinations "only by our Circuit Court").

It is true that the Eighth Circuit, along with other circuits, held in the past that § 1252(a)(2)(B) by its own terms eliminated jurisdiction only over decisions that involve the exercise of discretion and not "predicate legal question[s]." *Reyes-Vasquez v. Ashcroft*, 395 F.3d 903, 906 (8th Cir. 2005) (citation omitted); *see*, *e.g.*, *Sepulveda v. Gonzales*, 407 F.3d 59, 62–63 (2d Cir. 2005); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1141–44 (9th Cir. 2002). But *Reyes-Vasquez* was decided prior to the enactment of § 1252(a)(2)(D). *See Huang v. Napolitano*, No. CV-09-2125-PHX-NVW, 2010 WL 3283561, at *3 (D. Ariz. Aug. 18, 2010) (citing REAL ID Act, Pub. L. No. 109-13, Div. B, Title I, §§ 101(e), (f), 106(a), 119 Stat. 231, 305, 310 (2005)). The enactment of § 1252(a)(2)(D) undermines any interpretation of § 1252(a)(2)(B)(i) excluding "legal questions" from its coverage because if § 1252(a)(2)(B)(i) applies only to discretionary determinations and not "questions of law," then § 1252(a)(2)(D) would be redundant. *Huang*, 2010 WL 3283561 at *4–*5; *Djodeir*, 657 F. Supp. 2d at 24 ("Indeed, if Section 1252(a)(2)(B) did not foreclose judicial review of purely legal questions like statutory eligibility, there would be no need to except questions of law from the jurisdictional bar. In short, plaintiff's argument, if embraced, would render subparagraph (D) superfluous.").

Respondents did not cite § 1252(a)(2)(B)(i) to support their subject-matter-jurisdiction argument. Respondents' reply brief suggests a possible reason when it asserts:

The USCIS decision under review does not reflect that the agency adjudicated Plaintiffs' I-485 Supplements. Rather, the decision plainly that USCIS denied Plaintiffs' request to *file* I-485 Supplements as part of Plaintiffs' attempt to cure their prior unlawful admissions. Thus, USCIS never adjudicated Plaintiffs' I-485 Supplements, relying instead on well-established Supreme Court precedent to deny a *nunc pro tunc* filing of those supplements in the first instance.

ECF No. 18 at 9 (citations omitted). Perhaps Respondents are suggesting that a decision denying a "request to file" a form under § 1255 is not a decision "regarding the granting of relief" under § 1255. Regardless of its purpose, the Court rejects this argument. Petitioners sought relief under § 1255(i). Pet. ¶ 148. USCIS denied Petitioners' requested relief. Pet., Ex. 3. USCIS's decision says that "INA § 245(i) [codified at § 1255(i)] does not authorize USCIS to grant nunc pro tunc relief to a person unlawfully adjusted to permanent resident status. It is therefore unavailable in these naturalization proceedings." *Id.* at 5. Whether USCIS denied Petitioners' attempt to file their request for relief (*i.e.*, their form I-485 Supplements), or whether USCIS accepted filing of the forms but denied the relief requested in them makes no difference. The result is the same. Petitioners' request for relief—retroactive adjustment to lawful permanent residency under § 1255(i)—was denied. And that is enough to trigger the jurisdictional bar in § 1252(a)(2)(B)(i). Because this statute bars review, it is not necessary to address the "quite narrow[]" prohibition of judicial review for actions "committed to agency discretion." *Weyerhaeuser Co. v. U.S. Fish and Wildlife Servs.*, 139 S. Ct. 361, 370 (2018).[8]

---

[8] As noted earlier, USCIS gave alternative reasons for its denial of Petitioners' requests for retroactive adjustment. It first concluded that § 1255(i) "does not authorize USCIS to grant nunc pro tunc relief to a person unlawfully adjusted to permanent resident status." Petition, Ex. 3 at 5. Alternatively, it concluded that, even if such relief were

C

The parties have not addressed § 1252(a)(2)(B)(i). Therefore, the Court will delay entering a final order and judgment to provide the parties an opportunity to do so. The parties each are permitted, but not required, to file a brief not exceeding 2,500 words addressing this issue. If a party files such a brief, the brief shall be accompanied by a certificate of compliance as described in LR 7.1(f)(2). Any such brief shall be filed via CM/ECF on or before December 19, 2018.

III

Respondents seek dismissal of Petitioners' § 1421(c) claim for de novo review of the denial of their naturalization applications under Rule 12(b)(6). Respondents argue that *Al-Saadoon I* precludes Petitioners' claims in this action based on *res judicata*. Mem. in Supp. at 13–15. In deciding this motion, as with Respondents' Rule 12(b)(1) motion, Petitioners' material factual allegations must be accepted as true, and all reasonable inferences from those allegations must be drawn in Petitioners' favor. *Maki v. Allete, Inc.*, 383 F.3d 740, 742 (8th Cir. 2004).

---

available under the law, USCIS would deny the request "in the exercise of discretion" stemming from what USCIS concluded were false statements made by F.H. in *Al-Saadoon I* and in connection with his 2001 adjustment application. *Id.* Even if the first reason were a reviewable question of law, the decision seems correct. *See I.N.S. v. Pangilinan*, 486 U.S. 875, 883–84 (1988); *see also Oo v. Jenifer*, No. 07-CV-12030, 2008 WL 785924, at *5 (E.D. Mich. Mar. 20, 2008) ("In fact, case law holds that the INS lacks authority to grant adjustment of status nunc pro tunc."). Regardless, USCIS's alternative reason addresses the possibility that *nunc pro tunc* relief is available and is a quintessential exercise of discretion that is both unreviewable under even the cases decided prior to the enactment of § 1252(a)(2)(D), *e.g., Reyes-Vasquez*, 395 F.3d at 906, and independently sufficient to support USCIS's decision.

Of note, the Eighth Circuit has made clear that *res judicata* may be raised in a Rule

12(b)(6) motion to dismiss:

> Res judicata is an affirmative defense.  Before adoption of the Federal Rules
> of Civil Procedure, we recognized that a defense of res judicata may be raised
> in a motion to dismiss when the identity of the two actions can be determined
> from the face of the petition itself.  And under the Federal Rules, we have
> implicitly endorsed the use of a motion to dismiss to raise res judicata.
> Indeed, if an affirmative defense is apparent on the face of the complaint that
> defense can provide the basis for dismissal under Rule 12(b)(6).      Our
> interpretation of the phrase face of the complaint includes public records and
> materials embraced by the complaint and materials attached to the complaint.

*C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012) (citations

and internal quotation marks omitted) (alternation in original).  In *C.H. Robinson*, the court

found that "the complaint, with its attachments, provided sufficient bases for a res judicata

defense on a motion to dismiss" because the complaint contained "several allegations

concerning the order and judgment" in the allegedly preclusive action and "reveal[ed] the

applicability of res judicata to [the] case."  *Id.* at 764.  That is just as true with respect to

Petitioners' claims in this action.  The petition describes the allegedly preclusive matter,

*Al-Saadoon I*, in detail, Pet. ¶¶ 7–10, 33–36, 65–68, 92–95, and public records and

materials regarding *Al-Saadoon I* do as well.

"The preclusive effect of a federal-court judgment is determined by federal common

law."  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citation omitted).  The doctrine of

"[r]es judicata bars relitigation of a claim if: (1) the prior judgment was rendered by a court

of competent jurisdiction; (2) the prior judgment was a final judgment on the merits; and

(3) the same cause of action and the same parties or their privies were involved in both

cases."  *Cardona v. Holder*, 754 F.3d 528, 530 (8th Cir. 2014) (citing *Lane v. Peterson*,

899 F.2d 737, 742 (8th Cir. 1990)).  *Al-Saadoon I* no doubt meets the first two elements. Though Petitioners' opposition brief claims to dispute that these elements are met, Petitioners' argument actually seems directed toward whether *Al-Saadoon I* and this case are the "same cause of action."  Mem. in Opp'n at 9–10.  Petitioners do not dispute that the same parties are involved in both cases.  *Id.* at 9.

"Two causes of action are the same if they arise out of the same nucleus of operative fact" and "if proof of the same facts will support both actions, or . . . the wrong for which redress is sought is the same in both actions."  *Cardona*, 754 F.3d at 530 (citation and internal quotation marks omitted).  Petitioners seek redress for the same alleged wrong in this case as they did in *Al-Saadoon I*, and nothing has changed between then and now.  In *Al-Saadoon I*, Petitioners sought, and received, de novo judicial review of decisions denying their applications for naturalization.  *Al-Saadoon I*, 2014 WL 5362890 at *1.  The district court determined Petitioners were not "eligible to naturalize because they were not lawfully admitted to permanent residence status," *Id.* at *7, and the Eighth Circuit affirmed, *Al-Saadoon v. Lynch*, 816 F.3d at 1014–15.  Of note, Petitioners conceded at oral argument that, leaving aside their request for retroactive adjustment, there are no additional facts relevant to their naturalization applications in this case that were not before the court in *Al-Saadoon I*.  Unless and until something changes regarding Petitioners' status, the final judgment in *Al-Saadoon I* controls the outcome of Petitioners' § 1421(c) claims.[9]

---

[9]    To be clear, res judicata bars relitigating USCIS's denial of Petitioners' 2015 naturalization applications given the facts and circumstances of this case.  This Court has not considered the effect of res judicata on any other pending or future applications for adjustment of status or for naturalization made by these Petitioners.

Petitioners raise two additional concerns regarding Respondents' conduct. First, Petitioners allege that they are victims of USCIS's Controlled Application and Resolution Program (CARRP). Pet. ¶¶ 149, 153, 155–188; *See generally Am. Civil Liberties Union of S. Cal. v. U.S. Citizenship & Immigration Servs.*, 133 F. Supp. 3d 234, 238–39 (D.D.C. 2015). Petitioners do not appear to assert a separate cause of action based on these allegations. Even if they did, a pleading must "contain . . . a short and plain statement of the claim . . . and . . . a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(2)–(3). The "claim to relief" must be "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). This means that "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement for relief." *Id.* (citation and internal quotation marks omitted). Petitioners' CARRP allegations do not meet these standards. Petitioners describe CARRP only very generally, and then allege: "[u]pon information and belief, CARRP is the only reason [F.H.] and [O.A.]'s multiple petitions have languished at USCIS for well over a decade and suffered multiple denials over this time period," Pet. ¶ 186, and "[u]pon information and belief, CARRP is the reason for the denial of [F.H.] and [O.A.]'s prior petitions on very weak grounds." Pet. ¶ 187. These are just the sort of "naked assertions devoid of further factual enhancement" the Supreme Court has said are inadequate to state claim for relief. *Iqbal*, 556 U.S. at 678. Put another way, Petitioners do not plead sufficient facts about the alleged application of CARRP to the

particular applications and requests at issue in this case to cross the threshold from what is possible to what is plausible.

Second, Petitioners contend for the first time in their opposition brief that USCIS's denial of their request for *nunc pro tunc* relief violates the Religious Freedom Restoration Act of 1993 (RFRA). Mem. in Opp'n at 15–17. They argue that F.H.'s unauthorized employment at the ICCC was "in the context of observing the tenets of his Islamic religion" and is thereby protected free exercise. *Id.* at 15 (citing 42 U.S.C. § 2000bb-1(a)–(b)). There are many reasons this assertion cannot justify denying Respondents' motion. Three stand out. First, Petitioners assert no claim for relief in their petition under RFRA. Second, even if Petitioners had included the minimal RFRA-related factual allegations from their opposition brief in the petition itself, those allegations still would not state a plausible claim. Third, Petitioners' RFRA allegation seems to arise only from F.H.'s ICCC employment, and the determination that this employment was unauthorized was the very wrong for which Petitioners sought redress in *Al-Saadoon I*. Indeed, Petitioners alluded to RFRA in *Al-Saadoon I* before making it clear that they intended not to pursue a RFRA claim in that case. *Al-Saadoon I* Trial Tr. [ECF No. 49] 306:10-17; *Al-Saadoon v. Lynch*, 816 F.3d at 1015 n.2. Regardless, because the facts that would form the basis for any RFRA claim in this case were the same facts at issue in *Al-Saadoon I*, the judgment in *Al-Saadoon I* precludes Petitioners from pursuing a RFRA claim on that basis in this case.

# ORDER

Based upon all of the files, records, and proceedings in the above-captioned matter,

**IT IS HEREBY ORDERED THAT:**

1.    The parties each are permitted, but not required, to file a brief not exceeding 2,500 words addressing whether 8 U.S.C. § 1252(a)(2)(B)(i) deprives the Court of subject-matter jurisdiction to review the denial of Petitioners' request for *nunc pro tunc* adjustment of status (their I-485 Supplement A's).

2.    If a party files such a brief, the brief shall be accompanied by a certificate of compliance as described in LR 7.1(f)(2).

3.    Any such brief shall be filed via CM/ECF on or before December 19, 2018.

Dated: December 10, 2018          s/ Eric C. Tostrud
                                       Eric C. Tostrud
                                       United States District Court